102 So.2d 307 (1958)
Rose CROVELLA and Arthur Crovella, husband and wife, Appellants,
v.
Cleland D. COCHRANE, M.D., Appellee.
No. A-77.
District Court of Appeal of Florida. First District.
April 22, 1958.
Rehearing Denied May 14, 1958.
*308 Maurice Wagner and Richard D. Bertone, Daytona Beach, for appellants.
Cobb & Cole, Daytona Beach, for appellee.
STURGIS, Chief Judge.
Appellant, plaintiff below, seeks reversal of a summary judgment in favor of appellee, *309 defendant below, an obstetrician, against whom plaintiff sought to recover damages for personal injuries alleged to result from defendant's negligence in failing to correctly diagnose and treat the plaintiff, his patient, for an alleged pregnancy.
Appellant insists the trial court erred: (1) in conducting the hearing on the motion for summary judgment at the time noticed therefor; (2) in entering the summary judgment without formally disposing of plaintiff's pending motions, one of which was to stay the hearing and the other to strike certain portions of the proofs relied upon by appellee in support of his motion for summary judgment; (3) in refusing to grant said motion to strike; and (4) in entering summary judgment for defendant on the facts presented. The parties will hereinafter be designated as they were in the trial court.
The first point relates to the fact that although copies of the motion for summary judgment and supporting affidavits were served on plaintiff more than ten days prior to the hearing, the originals were not filed with the court until the morning of the hearing. Plaintiff made no objection to the trial court on that score, but on appeal for the first time challenges its authority to recognize the subject pleadings on the ground that they were not filed in compliance with Section 1.4(d), Florida Rules of Civil Procedure, 30 F.S.A., which requires that papers served after the complaint "shall be filed with the court either before service or immediately thereafter." There is no merit in this contention. Any advantage sought for violation of the rule must be presented by timely objection to the trial court. Moreover, this court will not concern itself with an assignment of error the nature of which is not shown to be harmful.
The second point challenges the entry of the summary judgment without first formally disposing of plaintiff's pending motions, one for an extension of time in which to present proofs in opposition to the motion for summary judgment and the other to strike certain proofs of the defendant. The court's action was tantamount to a denial of both motions.
As to the motion to extend time for presentation of proofs, the record here reflects that it did not contain the requisite supporting facts, nor was it verified as required by Section 1.36(f) Florida Rules of Civil Procedure. It further appears that when the cause came on to be heard on defendant's motion for summary judgment, the attorney for plaintiff, who also appears for her on this appeal, made an announcement to the effect that the proofs as to which the motion was addressed had in the meantime been secured, thus making it unnecessary to consider the motion. It also appears that plaintiff filed a petition for rehearing in the court below, that approximately three weeks elapsed before it was denied, and that no proffer of additional proofs was made during that period. Counsel for appellant is admonished that under those circumstances it is quite inappropriate to challenge on appeal the absence of a special order disposing of the motion.
It is the duty of counsel to make timely presentation of all evidence of his client on the issues raised by a motion for summary judgment if he is to avoid the consequences of a proper disposition of the motion on the evidence before the court. Sartor v. Arkansas Natural Gas Corp., 5 Cir., 134 F.2d 433.
On the third point, appellant insists that the trial court erred in denying her motion to strike the affidavit of a physician that was filed in support of defendant's motion for a summary judgment. It is argued that the affidavit does not comply with Section 1.36(e), Florida Rules of Civil Procedure in that: (1) it only reflects the opinion of affiant, based upon a hypothetical state of facts, rather than matters within his personal knowledge; (2) its force and effect depends upon the content and authenticity of papers which are not attached to the affidavit *310 or served therewith. The rule provides that supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein; and requires that sworn or certified copies of all papers referred to in an affidavit shall be attached thereto or served therewith.
As to the first ground of assault on the affidavit, the overwhelming weight of authority supports the view that except to the extent that the physical condition of a person is open to ordinary observation by persons of common experience, the testimony of one who is qualified in the field of medical knowledge must be adduced to inform the jurors of the proper procedures for diagnosing and treating the particular case. Millar v. Tropical Gables Corp., Fla., 99 So.2d 589; Howell v. Jackson, 65 Ga. App. 422, 16 S.E.2d 45. Jurors and courts do not know and are not permitted arbitrarily to say what are the proper methods of diagnosing and treating human ailments, and the opinion testimony of an expert witness, given in the form of an affidavit, is competent to be received by the judge in disposing of a motion for summary judgment, to the same extent and subject to the same rules as apply to the oral presentation of such testimony before a jury. The first ground of plaintiff's objection to the affidavit is therefore without merit.
The second ground upon which the affidavit is challenged is also without merit. Although the affidavit contains references to papers that are not attached thereto, the papers referred to form a part of the record in the cause. In those instances, if any, where copies had not been served on plaintiff's attorney, he had direct knowledge thereof by having participated in the proceedings as a result of which they were produced and made part of the record. The subject papers consist of depositions and affidavits that were germane to the hearing on the motion for summary judgment, and the references made to them in the challenged affidavit were so explicit as to leave no question as to their identity or relation to affiant's testimony. Thus the purpose of the rule was fully served.
The fourth point challenges entry of the summary judgment. It is elemental that if the evidence raises the slightest doubt upon any issue of material fact, if it is conflicting, if it will permit of different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it. Williams v. City of Lake City, Fla., Fla., 62 So.2d 732.
Against plaintiff's contention that the evidence was conflicting, defendant insists that it admits of only two conclusions of ultimate fact: (1) that plaintiff was not pregnant when she consulted the defendant; (2) that assuming plaintiff was pregnant, defendant followed accepted means and methods of the medical profession in examining and treating the plaintiff; and that in either case defendant is not liable as a matter of law. We find evidence in the record supporting the proposition that plaintiff was in fact pregnant when she consulted the defendant. Hence it would have been improper to enter the summary judgment if the question of liability depended on the accuracy or inaccuracy of the diagnosis. In a case of this nature, the use and value of evidence concerning the diagnosis lies in its relation to the question of negligence, if shown by other facts to exist.
The proofs, taken in the most favorable light for the plaintiff, reflect: The plaintiff, whose last menstrual period occurred December 1 to December 4, 1954, was seen professionally by a general practitioner of medicine on five occasions, January 15, February 9 (at which time he diagnosed pregnancy), March 5, April 6, and April 20, 1955. At the last visit he indicated something was wrong with the development of the fetus, that a Caesarean section might be required, and that he would call in a specialist at the last minute if necessary. She *311 consulted the defendant on April 27, informed him she was pregnant but that her doctor had told her the pregnancy was not advancing as it should, and employed defendant to diagnose whether she was pregnant. He examined her on that date and again on May 13, 1955. A test to determine pregnancy, known as the "frog test", had been given in the meantime, resulting in a negative showing. Defendant rendered his opinion and diagnosis that she was not at that time pregnant, gave her some nerve pills and told her that she might return to work as a waitress. She did so and on June 20, 1955 suffered a violent vaginal hemorrhage, discharging much blood and several pieces of matter which were not definitely identified as a fetus or parts of a fetus. She was rushed to a hospital where a third physician, a surgeon, promptly performed a dilation and curettement in the course of which he removed pieces of a placenta. The surgeon expressed the opinion that she suffered a miscarriage and stated that the "frog test" had little weight in the light of plaintiff's prior history.
The crux of this action is the alleged negligence of defendant. It was plaintiff's burden to make out a prima-facie showing of negligence. The affidavits of her medical witnesses do not directly or by reasonable inference maintain that burden. The affidavit of an expert witness reflects that the defendant followed accepted means and methods of one engaged in his profession and specialty in arriving at the challenged diagnosis.
There is no fixed criterion by which to mark the dividing line between the degree of care that must be exercised by those who engage as specialists in the several branches or fields of medicine as compared to the general practitioners. Neither insures the correctness of his diagnosis. Generally, it is the duty of each to apply to the diagnosis and treatment of his patient the skills, means, and methods that are recognized as necessary to be followed in the particular case according to the standards of those who are qualified by training and experience to perform similar services in the community. As said in Hill v. Boughton, 1941, 146 Fla. 505, 1 So.2d 610, 613, 134 A.L.R. 678:
"His responsibility is to use ordinary skill and diligence and to apply the means and methods ordinarily and generally used by physicians of ordinary skill and learning in the practice of his profession to determine the nature of an ailment and to act upon his honest opinion and conclusion."
This appears to be the universal rule. See Am.Jur., Physicians and Surgeons, Sec. 92, p. 209, and cases there cited. Generally, the doctrine of res ipsa loquitur does not apply in a malpractice case where negligence is charged in diagnosis or treatment. Hine v. Fox, Fla., 89 So.2d 13; Foster v. Thornton, 125 Fla. 699, 170 So. 459, 461.
In the leading case of Langford v. Jones, 18 Or. 307, 22 P. 1064, 1069, the court, in holding that the evidence was insufficient to impose liability upon a surgeon who removed a tumor from the neck of the uterus but did not discover that the patient was pregnant, appropriately observed:
"Other physicians might have been more successful,  might possibly have exercised better judgment in regard to the matter; but it would not follow that the appellant was liable to damages for malpractice. A liability, in such a case, does not attach as against the doctor, any more than it would against a lawyer who commits an error in the practice of his profession. The law exacts the same requirements and duties from each,  that he shall possess a reasonable degree of learning and skill, and exercise it according to his best judgment. It is not a difficult matter to indicate from a restrospective standpoint the proper course to have pursued in regard to affairs, however complicated they may have been. That is a very safe ground to occupy, and the would-be wise and sagacious usually has sufficient prudence not to venture *312 upon any other. They know thoroughly, and can point out accurately and decidedly, what course should have been pursued, after the occurrence to which it related has transpired."
Appellant stresses the case of Stevenson v. Yates, 183 Ky. 196, 208 S.W. 820, as decisive of the case under consideration. The similarities of that case to the case on review are more apparent than real. In the Stevenson case the plaintiff (patient) remained under the constant care and treatment of the defendant (physician) during the entire gestation period, at the end of which she delivered a fully matured but stillborn child. In the case on review the development of the fetus, if there was one, was apparently arrested before the defendant was consulted for the sole purpose of making a diagnosis of pregnancy or nonpregnancy as of that time. Only a superficial examination was given in the Stevenson case and despite the patient's insistence in the course of frequent visits that there was life in the fetus, the physician persisted in treating her over the entire period of pregnancy in accordance with an original erroneous diagnosis of a kidney condition, while in the case on review an examination was made according to accepted means and methods. In the Stevenson case expert witnesses testified that it was quite easy for a member of the medical profession to discover and detect an advancing pregnancy as was experienced by the plaintiff and that the treatment followed pursuant to the incorrect diagnosis was instrumental in causing the death of the child. On the basis of this testimony the controlling distinction between the two cases is apparent  the Stevenson case reveals competent testimony from which an inference of negligence could be drawn while the evidence before the trial judge in the case on appeal was not reasonably conducive to such an inference.
From what we have said, it is apparent that the summary judgment was properly entered.
Affirmed.
WIGGINTON, J., and FABISINSKI, L.L., Associate Judge, concur.