106 So.2d 565 (1958)
MEMORIAL HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, Appellant,
v.
Otto DORING, Appellee.
No. 51.
District Court of Appeal of Florida. Second District.
October 24, 1958.
Rehearing Denied December 10, 1958.
Blackwell, Walker & Gray, Miami, for appellant.
William L. Flacks, Hollywood, for appellee.
GERALD, LYNN, Associate Judge.
Appellee, Otto Doring, 68, suffered a heart attack about 11:00 o'clock P.M. on December 25, 1955. He was treated by a private physician, Dr. Novak, and remained at home in bed. About four o'clock the next morning Dr. Novak again examined appellee and arranged for his admission to appellant hospital. Appellee was taken there in an ambulance and was admitted to the hospital at approximately 5:00 o'clock A.M.
Appellee was quite sick and weak from his attack but did not lose consciousness. He was put to bed in a regular hospital bed without bed-rails. Dr. Novak gave the hospital detailed instructions for treatment of appellee, including one that he have "absolute bed rest".
About 8:00 o'clock A.M. a nurse and an X-ray technician found appellee walking in his room trying to get to the bathroom. They put him back to bed, and an X-ray was taken of his chest to show his heart and lungs. About 11:00 o'clock A.M. Dr. Novak again saw appellee and discovered on appellee's right buttock a "brush burn" or bruise of the type caused by brushing against a hard object while falling. The bruise was covered by a bandage.
Four days later, on December 30, appellee's complaints of pain in his right shoulder prompted Dr. Novak to order further X-rays. Examination of these X-rays revealed that appellee had a broken right arm at a point just below the shoulder.
Re-examination of the original X-ray also disclosed the fracture. There was no evidence that appellee had injured his shoulder prior to his admission to the hospital. It seems to be established, therefore, *566 that appellee injured his shoulder after his admission to the hospital but before the hospital personnel found him out of bed.
Appellee filed suit against the hospital, charging that he suffered a broken arm while a patient in the hospital and that the injury resulted from the hospital staff's negligence in improperly caring for him while he was in a helpless state, mentally and physically. Appellant hospital filed an answer containing a general denial and a plea of contributory negligence.
At the trial appellant moved for a directed verdict at the close of appellee's testimony and again at the close of all the evidence. The Court denied both motions. The jury returned a verdict of $7,500 for appellee. After appropriate post-trial motions were denied, appellant took this appeal.
The evidence fairly justified the inference that appellee injured his shoulder either by falling out of the hospital bed or by falling after he got out of bed and that he received the "brush burn" while falling.
The point involved on this appeal is whether there was any evidence tending to show that the hospital fell below the required standard of care in failing to take steps to assure that appellee would not get out of bed and injure himself. To answer this question, we must determine whether the circumstances shown above were sufficient to charge the hospital with notice of the patient's danger to himself.
Relying upon Dr. Novak's testimony that he did not order bed-rails placed on appellee's bed because he did not think they were necessary, appellant argues the evidence showed no negligence on the hospital's part. Cited in support of appellant's contention is Cochran v. Harrison Memorial Hospital, 1953, 42 Wash.2d 264, 254 P.2d 752, 756. There an 80-year-old woman, suffering from a slight heart attack, was placed in a bed without bed-rails. She fell while trying to reach a wash basin and sued the doctor and the hospital. The Trial Court directed a verdict for defendants. Affirming, the Washington Supreme Court said in part:
"The evidence produced by appellant showed that the bed in which she was confined was not equipped with bed rails at any time prior to her accident. This in itself is not proof of negligence. There must be proof that appellant was in a helpless condition which was known to the nurse and the hospital and that reasonable care under such circumstances required the installation of bed rails.
"As was said in Smith v. Simpson [1926], 221 Mo. App. 550, 288 S.W. 69, 72: `It is not disputed that all the authorities hold that private hospitals owe to their patients such ordinary care and attention as the mental and physical condition of such patients reasonably requires. The law demands reasonable care, such care as a reasonable man would take under the circumstances existing; but no man is required to take measures against a danger which the circumstances as known to him do not suggest as likely to happen.'
"There being no testimony that reasonable care on the part of the nurse or the hospital under the circumstances shown in this case required the installation of bed rails, the evidence was insufficient to warrant the submission of this issue to the jury."
Appellee contends, on the other hand, that failure to use bed-rails was not the only theory of negligence upon which the case was submitted to the jury. He argues that his injury would not have occurred had the hospital employees strictly enforced the doctor's order of "absolute bed rest", perhaps by maintaining better surveillance. He further says the question of the hospital's negligence, under the circumstances proven, was properly for the jury.
*567 Appellee admits on this appeal that his case was a normal (typical) one and that he needed neither special restraint nor special nursing care. It is difficult to imagine what steps the hospital should have taken to prevent appellee from getting out of bed, absent more drastic instructions from the doctor.
It should be noted that this case is not one wherein the nature of the injury itself is inconsistent with any theory other than that the hospital was negligent. In West Coast Hospital Ass'n v. Webb, Fla. 1951, 52 So.2d 803, cited by appellee, the patient was seriously burned while she was unconscious. The Trial Court there properly permitted the doctrine of res ipsa loquitur to supply the missing direct evidence of negligence on the hospital's part.
We agree with appellant hospital that the record in this case contains no evidence showing a violation of the standard of care imposed upon the hospital. Appellee having failed to prove what standard of care existed under the circumstances of this case and, further, that the hospital failed to meet the standard, the Trial Court should have directed a verdict for appellant.
The Florida Supreme Court, speaking through Justice Thornal in Bourgeois v. Dade County, Fla. 1957, 99 So.2d 575, 577 (on rehearing granted), said:
"The responsibility and degree of care imposed upon the appellee hospital is to be measured by the responsibility and degree of care imposed upon its employees * * *.
"* * * The hospital director himself testified that if a patient was unconscious and unable, as distinguished from unwilling, to give his name and state how he was injured when delivered to the hospital, then releasing him in the same condition would in his judgment fall below the standard of care required under the circumstances. The physician who was the supervisor of the emergency room at the time testified that if a patient in the condition of Bourgeois were admitted and could not give a history of his condition, and one could not be obtained, then he would certainly make X-rays in an effort to form a diagnosis."
The record in the case at bar is silent as to what the hospital should have done that it failed to do. Dr. Novak testified that he did not think bed-rails were necessary. Appellee admits that he did not need special nursing care. The doctor's instruction that appellee should have "absolute bed rest" was insufficient to charge the hospital with notice that appellee should be kept under constant watch lest he get out of bed and injure himself.
The judgment is reversed with directions to the Trial Court to enter judgment for the appellant.
ALLEN, Acting Chief Judge, and SHANNON, J., concur.