121 So.2d 682 (1960)
Clarence A. SPRICK, Jr., an Infant, by His Father and Next Friend, Clarence A. Sprick, and Clarence A. Sprick, Individually, Appellants,
v.
NORTH SHORE HOSPITAL, INCORPORATED, a Florida Corporation, Appellee.
No. 59-188.
District Court of Appeal of Florida. Third District.
June 27, 1960.
Rehearing Denied July 19, 1960.
*683 R.E. Hodges, Miami, for appellants.
Blackwell, Walker & Gray and John B. Kelley, Miami, for appellee.
PEARSON, Judge.
The plaintiffs, who are appellants here, filed a complaint in the Circuit Court charging that the defendant, hospital, negligently and carelessly failed to provide adequate or proper supervision and attendance of the infant plaintiff while said infant was a patient in the hospital. It was further alleged that such negligence resulted in the infant being permitted to strangle and to "stop breathing" for a period of approximately 45 minutes, with resulting physical injuries. The trial court entered a summary final judgment for the defendant hospital and this appeal followed. We hold that there was a material question of fact as to defendant's alleged negligence in that *684 the facts established by the pleadings, depositions and affidavits on file were such that negligence could logically be found by reasonable men. We therefore reverse and remand the cause for trial.
A hospital is bound to exercise toward a patient such reasonable care as his known condition may require, the degree of care being in proportion to his known physical and mental ailments. The extent and character of the care that a hospital owes its patients depends upon the circumstances of the particular case, and the measure of the duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in the community and required by the express or implied contract of the undertaking. Memorial Hospital, South Broward Hospital Dist. v. Doring, Fla.App. 1958, 106 So.2d 565; Marsh v. City of St. Petersburg, Fla.App. 1958, 106 So.2d 567.
The above general rule as to the care a hospital should exercise in safeguarding patients submitted to its charge points out that one of the elements in determining the amount of care to be exercised is measured by the capacity of the patient to care for himself. Naturally, a higher degree of care is required in attending a newborn baby than an adult. Cf. McCain v. Bankers Life & Cas. Co., Fla. App. 1959, 110 So.2d 718, 68 A.L.R.2d 1194.
The answer of the defendant consisted of a denial of any negligence on its part. Interrogatories were served on the plaintiffs and answered. The depositions were taken of the treating pediatrician and the registered nurse in charge of the nursery. The appellee urges that the basis for the summary judgment was the court's findings that the circumstances surrounding the accident as revealed by the depositions of the pediatrician and the registered nurse, together with certain hospital records and photographs attached to the depositions and to the affidavits, conclusively demonstrated that defendant hospital had done everything that it should have done in order to prevent the unfortunate occurrence. This position of the hospital was substantiated by affidavits of an administrator, who gave as his opinion, that the accident involving the infant was of a nature that could have occurred in any hospital nursery regardless of how much care and attention was exercised. There were also affidavits of several hospital administrators that this particular hospital was fully accredited at the time of the incident and that the nursery was generally maintained, staffed and supervised in accordance with the highest standards of nursery care.
It is our view that the affidavits as to the type of care in general given in the hospital were not determinative of the central question of fact in this case which was: How long was the child unattended? The affidavits mentioned consisted of opinions and showed on their face that the affiants had no personal knowledge of the events surrounding the injury to the infant. We must therefore turn to the answers to the interrogatories and the depositions of the nurse and the pediatrician to find what light was offered upon this question of fact.
The deposition of the treating pediatrician reveals that he was not present at the time of the strangulation. The doctor testified that such an accident could occur whenever an infant vomits since most newborn babies have a certain amount of mucus in the respiratory tract and that it is not at all unusual to have regurgitation with the first feedings largely to remove that mucus. This same doctor further testified that the infant had regurgitated after feedings. Such being the case, the law requires one to take such care as a reasonable man would take under the circumstances existing; but no man is required to take measures against a danger which the circumstances as know to him do not suggest as likely to happen. Marsh v. City of St. Petersburg, supra.
*685 Appellee points out that since the accident could have occurred anywhere, at any time, a hospital cannot be charged with the accident. The argument advanced overlooks the fact that the hospital is not charged with the fact that the baby did strangle but it is charged that the baby was left unattended over a length of time long enough to allow extensive damage because of the stoppage of breath.
The only relevant evidence in the record bearing upon the important question of whether the child was left unattended an improper length of time is that of the nurse. The nurse did not know the exact length of time which this child was left unattended and unobserved. She did state in her deposition, however, that the hospital chart indicated the feeding took place at six o'clock in the evening and that she first noticed the blue color of the baby at about seven o'clock, when she was walking around the cribs. The chart also indicated that the infant cried continuously after returning to the nursery from his six o'clock feeding. This same nurse also stated that the infant was in "the back row" of cribs.
The administrator of the hospital, a registered nurse, in an affidavit, stated that a nurse sitting at the desk in the nursery could see and hear all of the infants in their individual cribs. Attached to this affidavit are two pictures of the nursery taken from the chair at the desk where the nurse sat during the night in question. These pictures do not conclusively show that the babies located in the cribs in the back row could be observed from the nurse's station.
The determination, based upon all the evidence available, of whether this newborn baby was left unattended for an unreasonable and unsafe period of time, should be for the jury. See Atkins v. Humes, Fla. 1959, 110 So.2d 663. The summary judgment, therefore, is reversed and this cause remanded to the trial court for further proceedings.
Reversed and remanded.
HORTON, C.J., concurs.
CARROLL, CHAS., J., dissents.
CARROLL, CHAS., Judge (dissenting).
I respectfully dissent from the judgment of reversal. I am not in disagreement on the statement by the court of the principles of law relating to the duty owed by the hospital and those in charge of the infant to exercise due and proper care. However, when the defendant came forward with substantial evidence of due care and the plaintiff (who did not rely on the doctrine of res ipsa loquitur, but alleged a failure to maintain adequate supervision) did not present any contrary evidence or reveal that such evidence was available, the result was an absence of a genuine issue as to any material fact, and the summary judgment for the defendant was properly granted.