174 So.2d 408 (1965)
MERCY HOSPITAL, INC., a Florida corporation, Appellant,
v.
Ethel LARKINS and Charles Larkins, her husband, and Charles Larkins, Individually, Appellees.
No. 64-768.
District Court of Appeal of Florida. Third District.
April 27, 1965.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, and George O. Mitchell, Miami Beach, for appellant.
Tobin, Rubin, Salmon, Drucker & Moss, Coral Gables, for appellees.
Before CARROLL, HENDRY and SWANN, JJ.
PER CURIAM.
Appellant, Mercy Hospital appeals a final judgment entered pursuant to a jury verdict in favor of plaintiffs-appellees in a negligence action.
The facts of this case will be set forth in a light most favorably supporting the jury verdict.[1]
Appellee Mrs. Larkins was admitted to Mercy Hospital on August 5, 1963. Her physician, Dr. O.W. Burtner had instituted this hospitalization primarily for the purpose of treating her for pheochromacytomas, *409 a chronic high blood pressure disorder which, among other symptoms, causes dizziness, headaches and instability. On August 6, 1963, Mrs. Larkins was administered certain tests in connection with her ailment and was sedated before going to sleep. Dr. Burtner's instructions to the hospital regarding her mobility were bed rest for August 6, 1963 and bathroom privileges with assistance for August 7, 1963. Mrs. Larkins was not informed by the hospital that she was to call for assistance if she had to go to the bathroom, nor was she told not to leave her bed without assistance. During the early morning hours of August 7, 1963 (approximately 3:30 A.M.) Mrs. Larkins awoke as a result of an urgent need to void. Without first calling for assistance or reaching for her bed pan, she got out of bed and after taking a step or two, either due to dizziness or a slip, began to fall. In an attempt to steady herself she grasped for a bedside table which rolled as she grabbed it thereby further facilitating the fall which ultimately resulted in injuries which are the subject of this law suit.
The bed in which Mrs. Larkins was sleeping was equipped with side rails which were not engaged on the night of her fall. Evidence was introduced to the effect that if a patient is over 60 years of age, it is general nursing practice to put up side rails on the beds of those patients. Further, it was shown that one of the purposes of side rails is to deter patients from voluntarily leaving their beds. The evidence is such that the jury could find that the bed rest order given by Dr. Burtner was in effect at the time of Mrs. Larkins' fall.
Appellees relied principally on the theory that the hospital was negligent in failing to have engaged the bed rails on Mrs. Larkins' bed and that said negligence proximately caused her injuries.
The appellant sought to show that the hospital was not negligent or that it was plaintiff's own negligence that proximately caused her injuries.
The main issue for our determination is twofold: first, whether the evidence adduced at the trial was sufficient in law to have warranted submission of the case to the jury, and second, whether the evidence so adduced was likewise sufficient to support a verdict in favor of appellees.
The general rule is that a hospital is required to use reasonable care toward its patients.[2] What is reasonable care is determined by the circumstances of each particular case considering the patient's known condition in light of the degree of care used by hospitals generally in the community.[3]
Here, the evidence introduced showed that general nursing practice, in this community, is to put up bed rails for patients over sixty years of age to deter them from leaving their beds, this, coupled with the hospital's knowledge of Mrs. Larkins' disorder and Dr. Burtner's instructions concerning bed rest sufficiently raises a jury question as to whether failure to raise the bed rails constituted a breach of duty owed to Mrs. Larkins.
We have fully considered the evidence bearing on the issues of proximate cause and contributory negligence and conclude that said evidence is likewise sufficient in law to have warranted submission of those issues to the jury. Although we may have reached a different result than was reached by the jury, we can not say as a matter of law that the result reached by the jury is unsupportable by the evidence.
It has long been the Florida law and we need no citation of authority for the proposition that it is the jury's function to decide issues of fact. A case should not be withdrawn from the jury unless it appears as a matter of law that a recovery can not be had upon any view of the facts *410 which the evidence reasonably tends to establish.[4]
Appellants rely heavily on two Florida cases decided by the Second District Court of Appeal.[5] We agree with appellees that a careful examination of both those cases reveals that they were decided in favor of defendant hospitals on the grounds that the respective plaintiffs failed in their proof to establish both what standard of care existed and defendants' failure to adhere to that standard. As we have already indicated appellees herein did offer evidence on both the issues of duty and breach thereof, which evidence was sufficient to reach the jury.
We have considered appellant's other contentions regarding the jury's instructions and find them to be without merit.
Accordingly the judgment appealed is hereby affirmed.
Affirmed.
NOTES
[1] See Theriault v. Rogers, Fla.App. 1964, 166 So.2d 820.
[2] Sprick v. North Shore Hospital, Incorporated, Fla.App. 1960, 121 So.2d 682.
[3] Ibid.
[4] Alessi v. Farkas, Fla.App. 1960, 118 So.2d 658.
[5] Memorial Hospital, South Broward Hospital District v. Doring, Fla.App. 1958, 106 So.2d 565; Marsh v. City of St. Petersburg, Fla.App. 1958, 106 So.2d 567. For a full analysis of cases dealing with hospital liability for failure to supply bed rails, see 31 A.L.R.2d 1128, et seq.