200 So.2d 556 (1967)
Carl Paul LAB, Appellant,
v.
Charles C. HALL and Florida Sanitarium and Benevolent Association, Jointly and Severally, Appellees.
No. 487.
District Court of Appeal of Florida. Fourth District.
June 27, 1967.
Rehearings Denied July 18, 1967.
*557 Albert Yurko, Orlando, for appellant.
Charles W. Abbott, of Maguire Voorhis & Wells, Orlando, for appellee Charles C. Hall.
Leon H. Handley and J.H. Roberts, Jr., of Gurney, Gurney & Handley, Orlando, for appellee Florida Sanitarium and Benevolent Ass'n.
CROSS, Judge.
Appellant (plaintiff), Carl Paul Lab, appeals a final summary judgment entered in favor of each of the appellees (defendants), Charles C. Hall, a physician, and Florida Sanitarium and Benevolent Association, a hospital. The action is for damages resulting from the death of the plaintiff's wife who died as a result of pulmonary edema, bilateral, moderate severe, due to amniotic fluid embolism, occurring in parturition.
The complaint alleges malpractice by the physician and negligence of the hospital in exercising the standard of care owed by each and alleges a breach of that standard which breach proximately caused the death of plaintiff's wife.
After answering, each defendant moved for summary judgment on the ground that the pleadings, depositions, interrogatories and answers thereto and the entire record indicate there is no genuine issue as to any material fact and that each was entitled to judgment as a matter of law. No supporting affidavits were filed on behalf of either of the defendants. The plaintiff in opposition to the motion filed an affidavit of a medical doctor, a medical doctor's deposition and the hospital record.
Generally it is the duty of a medical practitioner to apply to the diagnosis and treatment of his patient the ordinary skills, means and methods that are recognized as necessary and which are customarily followed in the particular cases, according to the standard of those who are qualified by training and experience to perform similar services in the community. Olschefsky v. Fischer, Fla.App. 1960, 123 So.2d 751; Brown v. Swindal, Fla.App. 1960, 121 So.2d 38, 40; Crovella v. Cochrane, Fla.App. 1958, 102 So.2d 307, 311; Hill v. Boughton, 1941, 146 Fla. 505, 511, 1 So.2d 610, 613, 134 A.L.R. 678, 682; *558 Saunders v. Lischkoff, 1939, 137 Fla. 826, 835, 188 So. 815, 819.
A hospital is bound to exercise toward a patient such reasonable care as his known condition may require, the degree of care being in proportion to his known physical and mental ailments. The extent and character of the care that a hospital owes its patients depends upon the circumstances of the particular case, and the measure of the duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in the community and required by the express or implied contract of the undertaking. Sprick v. North Shore Hospital, Incorporated, Fla.App. 1960, 121 So.2d 682; Marsh v. City of St. Petersburg, Fla.App. 1958, 106 So.2d 567; Memorial Hospital, South Broward Hospital District v. Doring, Fla.App. 1958, 106 So.2d 565.
The party moving for a summary judgment has the burden of showing absence of a genuine issue of fact, and all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. Central Investments, Inc. v. Old Southern Golf Utility Corp., Fla.App. 1967, 197 So.2d 17; Leaks v. Adeimy, Fla.App. 1967, 195 So.2d 47; Warring v. Winn-Dixie Stores, Fla.App. 1958, 105 So.2d 915.
The function of the court in passing on a motion for a summary judgment is to determine whether there is a genuine issue of any material fact, not the determination of the issue of fact. Factual issues are not to be tried or resolved in such proceedings. Johnson v. Studstill, Fla. 1954, 71 So.2d 251.
Some cases by the nature of the complexity of the issues involved and obscurity of the answers are not susceptible of summary adjudication but require a full exploration by a trial. The granting or denial of a summary judgment should be accommodated in a common sense manner to the realities of the litigation at hand.
It has been recognized by the overwhelming majority that summary judgments must be cautiously granted in negligence cases. Booth v. Mary Carter Paint Company, Fla.App. 1966, 182 So.2d 292; Saunders v. Kaplan, Fla.App. 1958, 101 So.2d 181; Southern Express Co. v. Williamson, 1913, 66 Fla. 286, 63 So. 433. 30 Fla.Jur., Summary Judgment, § 6. Issues of negligence are ordinarily not susceptible of summary adjudication. 6 Moore Federal Practice, § 56.17[42], page 2583. This is particularly true in malpractice suits where, as here, the attendant facts are peculiarly within the knowledge of the movants and the showing of negligence is generally dependent upon expert testimony as to the standard of care required and observed.
Some material issues which the record has failed to negate are, for example, as to the defendant doctor, whether he exercised the ordinary skill, means and methods that are recognized as necessary when he gave the deceased the pitocin drug to induce labor without obtaining an obstetrical consultation which might have led to a cesarean operation in light of deceased's weight problem and prior history of miscarriages as brought forth by plaintiff's affidavit given by another physician.
As to the hospital, the above-quoted general rule pertaining to the standard of care a hospital should exercise in safeguarding patients submitted to its charge points out that one of these elements in determining the amount of care to be exercised is measured by the capacity of the patient to care for herself. Naturally a higher standard of care is required in attending a woman who is in labor and about to deliver a child.
The question of defendant's liability cannot be lawfully withdrawn from the jury and determined by the court unless the facts are not only undisputed *559 but are also such that all reasonable men, in the exercise of a fair and impartial judgment, must draw the inference and conclusion therefrom of non-negligence. Leaks v. Adeimy, supra.
Genuine issues of material fact exist as to whether or not the defendants breached their duty to exercise the standard of care each owed and if such breach was causally connected to the death of the plaintiff's wife.
Reversed.
WALDEN, C.J., concurs.
ANDREWS, J., dissents, with opinion.
ANDREWS, Judge, dissenting.
I respectfully dissent from the opinion of reversal.
This is an appeal by the plaintiff, Carl Paul Lab, from summary final judgments in favor of defendant, Charles C. Hall, a physician, and defendant, Florida Sanitarium and Benevolent Association, a hospital. Plaintiff sued Dr. Hall for malpractice and the hospital, for negligence.
On December 14, 1962, Rosalie Anne Lab, plaintiff's wife, was admitted to the defendant-hospital for delivery of a child. Mrs. Lab had been a patient of the Defendant-Hall since 1957 and had been given prenatal treatment and care by him prior to entering the hospital.
On two occasions prior to December 14th, Dr. Hall had administered pitocin, which is a drug used to induce labor. On December 14, 1962, Dr. Hall again gave Mrs. Lab pitocin. This time she began to go into labor and was admitted to the hospital around 5:30 P.M. Dr. Hall was in the hospital from around 6:30 P.M. until approximately 11:15 P.M. During this time he examined Mrs. Lab three times.
At Dr. Hall's order the nurse on duty gave Mrs. Lab pitocin intranasally at fairly regular intervals until 9:30 P.M. Mrs. Lab's labor proceeded slowly but normally until 12:15 A.M. At that time she was given an injection of demerol and scopolamine as prescribed by Dr. Hall. These drugs are used respectively to deaden pain and to dry up secretions. Within thirty seconds Mrs. Lab's face began to darken and her head hyperextended. Mrs. Lab died at approximately 12:16 A.M. of amniotic fluid embolism. Dr. Hall arrived at 12:20 A.M. and immediately performed a cesarean section in an unsuccessful attempt to save the infant.
On a motion for summary judgment the movant bears the burden of conclusively showing the absence of triable issues, and the opponent's burden extends only to showing the existence of those issues which movant attempts to negate. Visingardi v. Tirone, Fla. 1966, 193 So.2d 601; Holl v. Talcott, Fla. 1966, 191 So.2d 40.
From the depositions in support of defendants' motions for summary judgment it appears that (1) Mrs. Lab died of amniotic fluid embolism, the cause of which is unknown; (2) until the time of her death Mrs. Lab gave no sign of anything unusual or abnormal in her labor; (3) the nurses and aide, employees of the hospital, carried out Dr. Hall's orders which were customary and acceptable practice; (4) all medication prescribed by Dr. Hall, including pitocin, was of the kind normally given.
Taken alone, these depositions show no triable issues as to negligence of either defendant, or as to a causal connection. In an attempt to show that these issues do exist plaintiff filed an affidavit and deposition of Dr. Carlos Fallon, admitted to practice in New York but not in Florida. Dr. Fallon's affidavit, based on a hypothetical set of facts, asserts that Dr. Hall did not follow sound medical procedure and that this failure had a causal connection with Mrs. Lab's death. Neither the affidavit nor the deposition contain a statement specifying any acts of negligence *560 by Dr. Hall, nor do they even suggest negligence on the part of the defendant-hospital. The affidavit does nothing more than set forth unsupported conclusions.
From the deposition in opposition to summary judgment it appears that (1) Dr. Fallon thought that Dr. Hall used "poor judgment" in not asking for obstetrical consultation as to the possibility of performing a cesarean; that (2) he had no opinion as to whether a cesarean should have been performed or not; that (3) he thought that the amounts of pitocin "could" have been a factor in causing the uterus to contract with such force that amniotic fluid embolism would result; that (4) Dr. Fallon did not know the dosage of pitocin given; he assumed it; that (5) he stated there was no known connection between amniotic fluid embolism and pitocin; that (6) he could not say whether Dr. Hall's alleged departure from accepted practice had a causal connection with Mrs. Lab's death; that (7) he conceded it was proper practice to give pitocin even though the fetus is full term; that (8) Dr. Fallon said that pitocin is usually consumed in the body within fifteen to twenty minutes; that (9) he incorrectly assumed that pitocin was administered until 11:30 instead of 9:30; that (10) he agreed that calling another doctor is within the judgment of the treating physician; that (11) Dr. Fallon conceded Dr. Hall was in a better position than he to make medical judgments; that (12) he stated that the drugs prescribed and the manner of administration was not unusual; and that (13) Dr. Fallon does not know the cause of amniotic fluid embolism.
The plaintiff alleges but shows no negligence by Dr. Hall or the hospital staff. He has not shown the existence of a triable issue. The defendants have shown that everything was done in the accepted medical manner and that Mrs. Lab died from amniotic fluid embolism, cause unknown. The defendants have conclusively shown the absence of a triable issue. Plaintiff attempts to create issues by speculation where they do not exist.
Medical science does not yet know all of the answers. When an unfortunate and tragic event like Mrs. Lab's death takes place, individual defendants cannot be charged with knowing more than medical science. Post facto conjecture as to both defendants cannot create genuine issues of material fact.
I would affirm the entry of summary judgments for the defendants.