213 So.2d 321 (1968)
Dorothy O'GRADY and James O'Grady, Appellants,
v.
William WICKMAN, Molly Pearl Fabric, As Executrix of the Estate of Benjamin L. Fabric, Deceased, and Cloverleaf Hospital, Inc., a Florida Corporation, Appellees.
No. 1536.
District Court of Appeal of Florida. Fourth District.
June 27, 1968.
Rehearing Denied September 3, 1968.
*322 Maurice Fixel of Glasel, Meyer, Leben, Fixel & Gaines, Hollywood, for appellants.
Edward A. Perse of Carey, Dwyer, Austin, Cole & Selwood, Miami, for appellee Molly Pearl Fabric, as executrix.
CROSS, Judge.
The appellants-plaintiffs, Dorothy O'Grady and James O'Grady, her husband, appeal from a final summary judgment entered in favor of the appellee-defendant, Molly Pearl Fabric, as executrix of the estate of Benjamin L. Fabric, deceased, in a suit involving an alleged unauthorized surgery and malpractice.
*323 For many years the plaintiff, Dorothy O'Grady, a woman of twenty-nine years of age, had suffered with severe back pains. Late in the evening of January 7, 1963, Mrs. O'Grady was experiencing severe back pain and her husband telephoned Dr. Fabric, who advised that she be taken directly to Cloverleaf Hospital. She was admitted to Cloverleaf Hospital located in North Miami with her main complaint of severe pain in the lower back, the admitting physician being Dr. Benjamin L. Fabric (now deceased). Dr. Fabric had not previously attended Dorothy O'Grady and on admission to the hospital her "working diagnosis" was "muscular spasm." At the request and direction of Dr. Fabric a number of tests were performed on Mrs. O'Grady, all of which were negative. In the hospital record Dr. Fabric noted on January 8, 1963:
"Pt. [patient] has tumor of rt. [right] ovary and retroflexed uterus. Recommend surgery. May have to do a suspension or removal of uterus.
 /s/ Dr. Fabric"
Dr. Fabric was a physician engaged in general practice. He therefore requested one Dr. Wickman, a specialist in surgery and gynecology, to examine Mrs. O'Grady.
Dr. Wickman's examination of Mrs. O'Grady was limited to "a female examination" and her heart and blood pressure. Following his examination Dr. Wickman made a recommendation for surgery recorded in the hospital records as follows:
"Recommendations
1. Rt. [right] salpingo-oophorectomy
2. Ligation of left tube
3. Appendectomy (routine)"
Dr. Fabric then scheduled the surgery for January 15, 1963.
On the day prior to the surgery, on January 14, 1963, Dorothy O'Grady signed a form captioned "Special Consent to Operation, Anasthesia or Other Procedure," which stated in part:
"I hereby authorize Dr. Fabric & Wickman * * * to perform the following procedure Exploratory Lap (Laparotomy) * * *"
Dorothy O'Grady and James O'Grady signed a "Sterilization Permit" authorizing a "Tubal ligation."
On January 15, 1963, Dr. Wickman performed the following surgical procedures on Dorothy O'Grady:
1. Total hysterectomy
2. Right salpingo-oophorectomy
3. Appendectomy.
Following the surgery, Dorothy O'Grady had a leakage of urine from her vagina, and after her discharge from the hospital by Dr. Fabric, consulted a Dr. Sall who treated her for this problem, which condition he described as a vesico vaginal fistula, an opening between the vagina and the bladder. In the course of his treatment, Dr. Sall removed one or more of silk sutures from the fistula site of the vagina.
Subsequent to the hysterectomy, Dorothy O'Grady continued to have back trouble of the type about which she complained prior to her entrance into the hospital on January 8, 1963. She thereafter was attended by an orthopod in 1966 who diagnosed her condition as a chronic low grade low back syndrome due to a limb length discrepancy with her right leg longer than her left leg, with an associated scoliosis. It appears that her pain was subsequently relieved by the treatment given by the orthopod, which consisted of a heel lift and exercises.
On September 1, 1965, more than two years subsequent to the date of the operation in question, the plaintiff filed complaint against William Wickman and Molly Pearl Fabric, as executrix of the estate of Benjamin J. Fabric, deceased. The complaint, as amended and supplemented, was framed in seven counts; count one sounded *324 in tort for assault and battery against Dr. Fabric and Dr. Wickman; count two sounded in tort for negligence against Dr. Fabric and Dr. Wickman; count four sounded in tort for negligence against Dr. Fabric for alleged failure to inform Dorothy O'Grady that Dr. Wickman intended to perform a total hysterectomy and for negligence in post-operative care. Count six sounded in tort against the Cloverleaf Hospital. Counts three, five and seven contain the derivative claims of James O'Grady, Dorothy O'Grady's husband. The hospital and Dr. Wickman are no longer parties to this action.
After certain preliminary proceedings not pertinent here, the defendant answered in the form of a general denial, asserting that the plaintiffs were contributorily negligent and raised the limitation provisions of Section 95.11(6) of the Florida Statutes, F.S.A. as an affirmative defense.
Thereafter Dr. Fabric filed a motion for summary judgment, which the court granted in favor of the defendant, Dr. Fabric, finding "that plaintiffs' alleged cause of action against this defendant sounding in intentional tort, assault and battery, for failure to obtain informed consent is barred by § 95.11(6), Florida Statutes [F.S.A.]" which provides a two-year statute of limitations for actions in assault and battery, and with regard to plaintiffs' alleged cause of action against this defendant sounding in tort for malpractice there is no genuine issue as to any material fact and the defendant is entitled to a summary judgment as a matter of law. It is from this final summary judgment entered in favor of Dr. Fabric that the plaintiffs now appeal. First it is contended by the plaintiffs that the court erred in granting the motion for final summary judgment filed by the defendant, Dr. Fabric.
The burden on the party moving for summary judgment is to make a conclusive showing that there is no genuine issue of material fact. All inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. Holl v. Talcott, Fla. 1966, 191 So.2d 40; Lab v. Hall, Fla.App. 1967, 200 So.2d 556.
What is of great import in the cause before us is that the basis of plaintiffs' claims against Dr. Fabric appear to be twofold. First, Dr. Fabric's own conduct in the care and attendance he rendered the plaintiff, Dorothy O'Grady; and second, Dr. Fabric's responsibility for the conduct of another doctor, i.e., Dr. Wickman.
In dealing with Dr. Fabric's own conduct in the care and attendance that he rendered the plaintiff, Dorothy O'Grady, it has been stated that the duty of a physician in connection with the diagnosis and treatment of a patient is that the physician must use the ordinary skills and means and methods that are recognized as necessary and which are customarily followed in the particular type of case according to the standards of those who are qualified by training and experience to perform similar services in the community or in a similar community. Brooks v. Serrano, Fla.App. 1968, 209 So.2d 279; Lab v. Hall, supra. In cases of this type, expert testimony is required to ascertain what skills and means and methods are recognized as necessary and customarily followed in the community. Such expert testimony is not required where the duty and its breach are so obvious as to be apparent to persons of common experience. Brooks v. Serrano, supra.
The case before us is one which would of necessity require expert testimony. We glean from the record that the plaintiffs submit on their behalf the testimony of a doctor, who asserts that the examinations and tests conducted on Dorothy O'Grady at the hospital during the period of January 8th through January 15th fell below the standards of care in that the attending physicians had failed to perform the required tests in light of her complaints; that an examination of Dorothy O'Grady in 1966 found that there was a limb length discrepancy and scoliosis were *325 evident in x-ray film taken in that hospital on January 8, 1963. The doctor further asserts that Dorothy O'Grady had not been a proper candidate for a hysterectomy on January 15, 1963, in that even assuming her backache had been caused by the retroversion-retroflection of the uterus, the attending doctors failed to perform a simple diagnostic test, namely, the insertion and use of a pessary, and that a tubal ligation would not have affected her back condition.
In further opposition to the motion for summary judgment, the plaintiffs submit an affidavit from another doctor, which among other assertions, stated that the patient at the time of her discharge from the hospital was having a urine leakage problem, and a thorough investigation of this urological complication was not carried out following the surgical procedure. It is asserted that Dorothy O'Grady was discharged by her attending physician, Dr. Fabric, with an undiagnosed vaginal discharge of urine, which subsequently proved to be a vesico-vaginal fistula, and that she should not have been discharged from the hospital in such a condition.
We find nothing in the record to negate what above has been alluded to, and therefore we find that material issues of fact exist as to whether Dr. Fabric used the ordinary skills, means and methods that are recognized as necessary and are customarily followed in this particular type of case, according to the standards of those who are qualified by training and experience to perform such similar services in the community or in a similar community.
The problem of holding one medical doctor liable for another's conduct has of late received substantial judicial attention.[1] Such attention has been brought to light in Florida in Montgomery v. Stary, Fla. 1955, 84 So.2d 34. This case dealt with a malpractice suit brought on behalf of an infant daughter by her father against doctors for the loss of the daughter's fingers and thumb due to the doctors' alleged negligence in treating the poor circulation in the daughter's arms immediately after birth. The two doctors in Montgomery concurred in the treatment given and both apparently were present in the early stages when one doctor was treating the infant by applying hot towels to the infant's arm. The court held that the jury could have found that by the actions of one of the doctors he elected to participate in supervising the treatment given the child, and that he failed to use due care in not checking the temperature of the hot applications applied to the infant. Apparently, the court determined that physicians who diagnose and treat a case together without withdrawal by or discharge of either are both liable if the treatment is negligent.
The courts appear to be divided regarding the question of the responsibility of one physician for the negligence of another. Some courts have held that a physician who has advised his patient that an operation should be performed by another is not to be held liable for the surgeon's negligence. In some of these cases, the physician not only selected the surgeon but was either present or assisted in some way at the operation. Brossard v. Koop, 1937, 200 Minn. 410, 274 N.W. 241; Shannon v. Ramsey, 1934, 288 Mass. 543, 193 N.E. 235; Beckwith v. Boynton, 1924, 235 Ill. App. 469; Robinson v. Crotwell, 1911, 175 Ala. 194, 57 So. 23; Brown v. Bennett, 1909, 157 Mich. 654, 122 N.W. 305.
There are, on the other hand, many courts which have held that one physician is a joint tortfeasor with the other and is liable for his actions when there is a concert of action and a common purpose existing between the two doctors. See Graddy v. New York Medical College, 1963, 19 A.D.2d 426, 243 N.Y.S.2d 940; Mutschman v. *326 Petry, 1933, 46 Ohio App. 525, 189 N.E. 658; Voter v. Newsalt, 1929, 58 N.D. 154, 225 N.W. 74; Bolles v. Kinton, 1928, 83 Colo. 147, 263 P. 26, 56 A.L.R. 814; Manley v. Coleman, 1924, 19 Ohio App. 284. We adhere to the determination made by these latter courts as being the better viewpoint, since we feel that this view best exemplifies a duty owed to society by those who hold themselves out to be skilled in curing human ills.
We glean from the record that Dr. Fabric admitted Dorothy O'Grady into the hospital and during her stay in the hospital she appeared to be under his daily care and supervision. The hospital records reveal that Dr. Fabric upon preliminary examination of Dorothy O'Grady recommended surgery, to-wit, to do a suspension or removal of the uterus. Dr. Fabric called in Dr. Wickman for further consultation; Dr. Wickman recommended the surgery which was performed; Dr. Fabric scheduled the surgery. The hospital records reveal that Dr. Fabric was an attending physician at the time the surgery took place. An affidavit of the plaintiff, James O'Grady, asserts that he was waiting outside the operating room during the operation upon his wife, and that Dr. Fabric came out of the operating room; that James O'Grady inspected the premises, and particularly the doors and the rooms behind the door, which was described as the operating room, and stated that Dr. Fabric definitely was in the operating room during the time that Dorothy O'Grady was being operated on.
It appears clear to this writer that under these circumstances issues of material fact exist and have not been negated by the record as to whether there was a concert of action and a common purpose existing between the two doctors. Thus it was error by the trial court to grant final summary judgment to the defendant on the basis that the plaintiffs' alleged cause of action against the defendants sounding in tort for malpractice contained no genuine issue as to any material fact.
Plaintiffs further assert that the lower court erred in ruling that plaintiffs' claims based on lack of consent were barred by the statute of limitations.[2] The principle adhered to by the majority of courts which have had occasion to deal with this subject is exemplified in White v. Hirshfield, 1925, 108 Okla. 263, 236 P. 406, wherein the court held:
"Where a patient is under the care, treatment and control of a physician and an unnecessary operation is performed without the consent of such patient, * * * the elements of the technical assault and battery include malpractice and a violated duty upon the part of the physician to his patient." (Emphasis added.)
This doctrine has been expanded. See Physicians' and Dentists' Business Bureau v. Dray, 1941, 8 Wash.2d 38, 111 P.2d 568, wherein the court held that:
"While an unauthorized operation is, in contemplation of law, an assault and battery, it also amounts to malpractice, even though negligence is not charged." (Emphasis added.)
The Dray case has subsequently been cited with approval. See Maercklein v. Smith, 1954, 129 Colo. 72, 266 P.2d 1095; Bakewell v. Kahle, 1951, 125 Mont. 89, 232 P.2d 127. An interesting and more general discussion of this subject may be found in McClees v. Cohen, 1930, 158 Md. 60, 148 A. 124; Burke v. Maryland, 1921, 149 Minn. 481, 184 N.W. 32; Francis v. Brooks, 1926, 24 Ohio App. 136, 156 N.E. 609; Hershey v. Peake, 1924, 115 Kan. 562, 223 P. 1113.
*327 The Texas Supreme Court in Wilson v. Scott, Tex. 1967, 412 S.W.2d 299, held that regardless of what some earlier informed consent cases suggest, such an action need not be pleaded as one for assault and battery. The traditional elements of assault and battery, unlawful use of violence upon another and intent to injure are absent in most malpractice cases based upon a physician's failure to make sufficient disclosure. See also DiRosse v. Wein, 1965, 24 A.D.2d 510, 261 N.Y.S.2d 623; Aiken v. Clary, Mo. 1965, 396 S.W.2d 668; McCoid, A Reappraisal of Liability For Unauthorized Medical Treatment, 41 Minn.L.Rev. 381 (1957).
My research reveals only one Florida case to date that has dealt with this subject, and its holding is in accord with the majority viewpoint. See Brown v. Wood, Fla.App. 1967, 202 So.2d 125.
In view of the foregoing enunciated principles, we determine that the gist of a cause of action wherein it is asserted in a complaint that one engaged in medical practice has performed an operation without obtaining an informed consent is the alleged wrongful and negligent act of the perpetrator in doing something which under the circumstances should not have been done, or in omitting to do that which should have been done. My view is further strengthened where under our present reforms and generally liberalized pleading and procedure, we look to the substance rather than the form in the trial of civil cases. When one asserts in a complaint the above alluded to allegation, it is not a question of whether he has alleged a cause of action for either one as between assault and battery and negligence, but are the allegations, although they may sound in assault and battery, sufficient to support a claim for negligence?
In the instant case we believe they are. We therefore hold that the trial court erred in ruling that the two-year statute of limitations barred the instant action insofar as plaintiffs' claims were based on lack of consent.
The summary final judgment is reversed and the cause is remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
WALDEN, C.J., and MELVIN, WOODROW M., Associate Judge, concur.
NOTES
[1] For an excellent annotation on this subject, see 85 A.L.R.2d 889; see also 41 Am.Jur., Physicians and Surgeons, § 113, pages 225-26; and 70 C.J.S. Physicians and Surgeons § 54c, pages 977-978.
[2] Section 95.11 Limitations upon actions other than real actions.

(6) WITHIN TWO YEARS.  An action by another than the state upon a statute for a penalty or forfeiture; an action for libel, slander, assault, battery or false imprisonment; an action arising upon account of an act causing a wrongful death. (F.S. 1965, F.S.A.).