PER CURIAM.
Plaintiffs, Gary Wale, a minor, and Pamela Wade, his mother, appeal from a final judgment of the Circuit Court of Dade County entered pursuant to a directed verdict granted in a jury trial in favor of the defendants, Dr. Sheldon H. Barnes and Dr. Raphael S. Good, at the conclusion of the plaintiffs’ evidence. The doctors were sued individually and as partners for injuries sustained by the infant Gary as a result of the alleged negligence of Dr. Barnes in the performance of his duties as obstetrician while attending Mrs. Wale at the birth of her child, Gary.
*202 In one count the complaint alleged that Dr. Barnes attended Mrs. Wale and undertook to deliver her child at Hialeah Hospital, on December 23, 1965; that while in the performance of his duties as obstetrician he carelessly and negligently used forceps on the head and body of her child, causing serious head and brain damages; that the use of forceps in aid of the birth of her child was error and negligence on the part of Dr. Barnes; and that Dr. Barnes negligently and carelessly failed to diagnose and treat her son’s injuries. It is further alleged that the acts complained of constituted negligence and unskillful medical practice that departed from or fell below the standard of care of an obstetrician practicing in Dade County, Florida.
In a separate count of the complaint the plaintiffs allege trespass to the person in that Dr. Barnes did not inform Mrs. Wale that such method of delivery involved the risk that the child would receive bruises and lacerations to its head from the use of forceps and would result in subdural hema-tomas; that had she known of such risk she would not have consented to such method of delivery. Plaintiffs further allege that Dr. Barnes knew or should have known that there were other means of delivery which were equally effective and safer than the method used, but he failed to inform Mrs. Wale of these other methods. It is alleged that such acts and conduct constituted error, bad judgment and unskillful medical practice, and departed from and fell below the standard of care required of a physician in Dade County, Florida.
Defendants by their answers denied all allegations of negligence or wrongful conduct.
During the plaintiffs’ presentation of their case at trial evidence was adduced showing that Mrs. Wale, the nineteen year old mother, was taken to Hialeah Hospital on the night of December 22, 1965, showing signs that she had reached the point where the birth of her child was approaching. She called a physician before going to the hospital who had agreed to deliver the child and was told by him to go to the hospital for delivery by a specialist. The specialist referred to was Dr. Barnes, whom she met there for the first time. After an examination, Dr. Barnes determined that she was not in labor but kept her in the hospital for observation because ruptured membranes were observed. When she awoke the next morning she was in labor and was taken into the hospital’s labor room where she was examined and measured by Dr. Barnes. He determined from the measurement that the mother was small but adequate for a natural birth. He also determined that the baby was in an unfavorable position and would have to be turned by him if the child failed to turn spontaneously. After waiting for what he considered to be a sufficient time, the doctor determined that the child’s movement had stopped and that there would not be a spontaneous turning of the child. He elected to manually turn the child (without forceps) and it was easily done; after the turn was made the child moved a bit nearer birth but stopped at “plus three position.”
After waiting for further spontaneous movement and birth of the child, the doctor concluded that these events would not occur. He thereupon decided to use forceps for the delivery. The instrument used is what is known in the medical profession as long Tucker-McLane forceps. (The two types of forceps look like long-handled tongs. The Tucker-McLane forceps has thin, solid blades and a narrower shaft than does the Simpson forceps, with its solid, somewhat thicker and wider blades and slightly larger shaft.) A “moderately difficult mid forceps delivery” was made in eight or ten minutes during which time the doctor applied compression and traction to the forceps on the baby’s face approximately five times.
The child was born severely bruised, with black eyes, and a laceration on his scalp. The head was elongated but consid *203 erably “molded.” Gary, Mrs. Wale’s first child, weighed six pounds, six ounces at birth.
During the three months between the discharge of the child from the Hialeah Hospital and his admission to Jackson Memorial Hospital, his sleeping habits were extremely erratic; his head was unusually shaped and changed configuration from day to day. The child was admitted to Jackson Memorial Hospital because of convulsions. He was operated on twice at Jackson for bilateral subdural hematomas and given lengthy treatment, but he continued to suffer mental and physical disturbances. One of plaintiffs’ medical experts was of the opinion that the cause, within reasonable medical probability, of the chronic subdural hematomas was the traumatic or injurious forceps delivery of this child in which the head was injured. Another of plaintiffs’ medical experts was of the opinion that the use of Tucker-McLane forceps, based upon the facts shown in the case, fell below the standard of care required by an obstetrician and gynecologist practicing in the Miami area. He considered the Tucker-McLane type forceps as practically obsolete for mid forceps delivery, especially where there is a molded head involved. Another type forceps (Simpson) was considered by him to be less likely to slip and cause injury.
Another of plaintiffs’ expert medical witnesses, a pediatric neurologist, testified that virtually all subdural hematomas are caused by trauma, and that the most frequent trauma in children below six months is the unavoidable trauma of birth itself. He also testified that the trauma of being born, or a rough delivery in any fashion (with or without forceps), could cause sub-dural hematomas, but he could not say that subdural hematomas were caused by the application of the forceps.
Dr. Barnes testified as to the procedures used by him in the treatment of Mrs. Wale and the delivery of her child. He stated that he elected to use forceps because the child had been subjected to the tremendous natural pressure of the mother’s muscular contraction for some five or six hours, and that further prolonged exposure to such pressure could endanger the life of the child. He also took into consideration the fact that the mother’s membrane had ruptured some twenty-four to thirty-six hours before, and that there was increasing risk of infection to both mother and child. He believed his use of the Tucker-McLane forceps was entirely proper and the instrument best suited under the existing circumstances. He explained that they were used properly and that there was no slipping of the forceps or undue pressure applied.
Plaintiffs contend that the trial judge erred in directing verdicts for the defendants because the evidence showed that there were triable issues of fact presented which should have been resolved by a jury.
The appellants assert that the malpractice consists of first, performing a forceps delivery rather than a Cesarean section (because the fetus was too high in the birth canal); second, improperly performing the forceps delivery; third, in employing the wrong type of forceps; and fourth, in not securing the informed consent of the patient to a forceps delivery.
On an appeal from a directed verdict the evidence must be viewed in the light most favorable to the party against whom the verdict was directed.
The three elements of an action for negligence are: existence of a duty, breach of that duty, and injury or damage resulting from such a breach. In an action for malpractice the plaintiff bears the burden of proving by direct evidence or inferences reasonably drawn therefrom, the standard of care, the failure to meet that standard, and that the failure to conform to the standard of care proximately caused the damages claimed. See: Hunt v. Gerber, Fla.App.1964, 166 So.2d 720, 721-722.
We have examined the record, which includes the two types of forceps, *204 and have carefully considered the arguments advanced in the briefs and in oral argument in light of the authorities there cited. In large part the appellants’ case depends upon evidence as to the condition of the child at birth, and also includes certain expert testimony concerning the pref-erability of the use of Simpson forceps rather than Tucker-McLane forceps in the delivery of a fetus with a molded head. In this posture the crux of the case is whether the appellants have presented a prima facie case that the bilateral frontal temporal subdural hematomas were proximately caused by the negligence of the attending obstetrician, Dr. Barnes, rather than natural or non-negligent causes associated with a difficult delivery. The parties conceded that subdural hematomas may be caused without negligence by a difficult trip down the birth canal. Despite the expert advocacy of appellants’ counsel, insufficient facts were adduced justifying the inference that the alleged slippage of the forceps actively caused undue pressure ultimately resulting in the brain injuries of young Gary, or that any of the injuries complained of were caused by that negligence of defendants. It is our opinion that this case is governed by the rules stated in Le Prince v. McLeod, Fla.App.1965, 171 So.2d 189 and Lane v. White, Fla.App. 1964, 167 So.2d 14, and therefore the trial court was correct in granting a directed verdict for the defendants.
We have considered the three points argued for reversal, and conclude that no error having been demonstrated, the judgment appealed is affirmed.
Affirmed.