278 So.2d 601 (1973)
Gary Patrick WALE, by His Mother and Next Friend, Pamela Wale, and Pamela Wale, Individually, Petitioners,
v.
Sheldon H. BARNES and Raphael S. Good, As Partners Comprising a Partnership, et al., Respondents.
No. 42486.
Supreme Court of Florida.
May 9, 1973.
Rehearing Denied June 26, 1973.
*602 Alan R. Schwartz, of Horton, Schwartz & Perse and Sams, Anderson, Alper, Spencer & Post, Miami, for petitioners.
James E. Tribble, of Blackwell, Walker & Gray, Miami, for respondents.
DEKLE, Justice.
This cause is before us on petition for writ of certiorari to review a decision of the Third District Court of Appeal reported at 261 So.2d 201 affirming the trial court's directed verdict in favor of the defendants in a malpractice case. Such decision in expressly relying upon Le Prince v. McLeod, 171 So.2d 189 (Fla.App.3d 1965); and Lane v. White, 167 So.2d 14 (Fla. App.3d 1964), creates a misapplication of law as a basis for our review inasmuch as the factual situations in the cited cases vary materially from the facts set forth in the body of the opinion under review. Accordingly, we have conflict certiorari jurisdiction under Fla. Const. art. V, § 3(b)(3) (1973), F.S.A. McBurnette v. Playground Equipment Co., 137 So.2d 563 (Fla. 1962); and Spivey v. Battaglia, 258 So.2d 815 (Fla. 1972).
*603 Plaintiffs, Mrs. Wale and her son, Gary, brought suit against Doctors Good and Barnes, individually and as partners. The plaintiffs framed their complaint in two counts which were negligence and trespass to the person, respectively. The first count alleged that co-defendant, Dr. Barnes, in the performance of his duty as an obstetrician during the delivery of Mrs. Wale's son at the Hialeah Hospital, Dade County, Florida, negligently and carelessly used forceps on the head of the infant causing severe head and brain injuries; and that Dr. Barnes' use of said forceps in this factual situation constituted negligence and unskillful medical practice below the standard of care required of obstetricians practicing in Dade County, Florida.
In their answers, defendants denied all allegations of negligence whereupon the case went to trial. The crucial facts surrounding the birth of Gary Patrick Wale as derived from the opinion and record are as follows: Mrs. Wale went to the Hialeah Hospital because the birth of her child became imminent. Dr. Barnes, who had been referred to her as a specialist, met her at the hospital and made an initial examination. The next morning Mrs. Wale developed labor pains. Dr. Barnes then measured her and based upon his judgment, he manually turned the child (without forceps) in an attempt to ease delivery. However, this procedure did not cause childbirth and Dr. Barnes decided to use forceps. He chose Tucker-McLane forceps even though the baby's head was "considerably molded" (elongated) and applied the forceps to the baby's face several times during the delivery. After 8 to 10 minutes of a "moderately difficult mid-forceps delivery" the baby was born. At birth, the child had serious injuries including bruises on the cheeks and a scalp laceration on the side of the head. These injuries were treated and Gary was subsequently discharged from Hialeah Hospital.
During the next three months Gary had unusual sleeping habits and the configuration of his head changed, daily. Gary then suffered from convulsions and was admitted to Jackson Memorial Hospital where two operations were performed on his head for subdural hematomas, commonly referred to as a blood clot on the surface of the brain. As a result thereof, Mrs. Wale and Gary filed this malpractice action.
At the close of the plaintiffs' case, the trial judge upon motion, directed a verdict for the defendants. On appeal, the Third District in a split decision affirmed the directed verdict stating that plaintiffs had not made a prima facie case on the question of proximate causation.
The key issue for us in this malpractice case concerns the propriety of the trial court's directed verdict in favor of defendants (doctors) and the subsequent affirmance by the district court. These lower court rulings mean that plaintiffs did not present a prima facie case of medical malpractice. In other words, plaintiffs did not satisfy their burden of establishing (1) a standard of care owed by defendants to plaintiffs, (2) a breach of that standard, and (3) that said breach proximately caused the damages claimed. See Hunt v. Gerber, 166 So.2d 720 (Fla.App.3d 1964).
Our careful review, however, leads us to the opposite conclusion. The record in this cause contains sufficient evidence on these three prerequisites outlined above to make a prima facie case of medical malpractice which necessarily precludes a directed verdict for the defendants on the issue of liability.
The first two elements of a prima facie case of malpractice as set forth above are a standard of care and a breach of that standard. The evidence on these two elements is found in the testimony of Dr. Kahn. According to Dr. Kahn the use of Tucker-McLane forceps on Gary's "molded" head during a mid-forceps delivery constitutes a departure from the acceptable medical standard of care in Dade County, Florida. Defendants, respondents *604 herein, attack this testimony by arguing that it is "insufficient" inasmuch as Dr. Kahn said the forceps slipped and the uncontradicted testimony in the record demonstrates that the forceps did not slip. This argument, however, overlooks the impact of Dr. Kahn's testimony. There is evidence in the record indicating that the forceps did not slip; even so, Dr. Kahn expressed his own opinion that the forceps did in fact slip. In this factual setting, the question of whether the forceps slipped being fairly debatable, the opposing view-points regarding this slippage are for the jury's consideration.
We now proceed to the last element in this cause for establishing a prima facie case of medical malpractice, to-wit: proximate causation, which is the apex upon which the district court turned its decision. The question is whether there is evidence demonstrating a causal connection between Gary's subdural hematomas and the aforesaid negligence attributed by Dr. Kahn to the use of Tucker-McLane forceps in order to effectuate childbirth in these circumstances. The district court's 2-1 decision based its affirmance of the directed verdict for the defendants upon the sole ground that the plaintiffs did not present evidence making a prima facie case on this matter of causation. According to the majority opinion, plaintiffs conceded that the forceps may not have caused the injury; and that the cause of Gary's injuries could have resulted from a non-negligent act, such as the trauma of merely being born or rough movement down the birth canal. In this context, the majority relied upon its previous decisions in Le Prince v. McLeod, supra, and Lane v. White, supra, holding that since plaintiffs there failed to negate the possible non-negligent causes for the injuries, directed verdicts for the defendants were required.
The district court mistakenly relied on its earlier decisions in Le Prince and Lane. On prior occasions, we have said that if a district court of appeal expressly adopts a decision of this Court[1] or another district court[2] as controlling precedent even though the factual situation under review is materially distinguishable from the case or cases relied on, such reliance constitutes a misapplication of law vesting conflict certiorari jurisdiction in this Court. Of course, under the New Article V, § 3(b)(3)(1973), F.S.A., which permits a direct conflict with decisions of the same district court of appeal, this concept known as misapplication of law can apply to cases in which a district court as here specifically relies on one or more of its own decisions as the governing law.
Applying this jurisdictional principle, we conclude that the district court of appeal in the decision below misapplied the law in its prior decisions of Le Prince and Lane by expressly accepting them as controlling precedent here. In Le Prince and Lane which deal with causation the testimony did not pinpoint the cause of the injury in that there was no direct proof that the injury resulted from a definite negligent act or cause. The Third District in those cases said the defendants were entitled to directed verdicts because plaintiffs did not eliminate the possible non-negligent causes. Our case is factually distinguishable from Le Prince and Lane inasmuch as there is direct medical evidence offered by Dr. Kaplan, which appears in the body of the district court opinion, attributing and pinpointing the cause of Gary's injuries to the forceps delivery, whereas no direct evidence is present in Le Prince and Lane which supports the contention that the injuries resulted from a specific negligent act or cause. The direct medical evidence presented by Dr. Kaplan creates a prima facie case on the question of causation. *605 The pertinent portion of Dr. Kaplan's testimony is as follows:
"Q (By Mr. Bridges) Doctor, let me ask you to assume the following set of facts:
I would like for you to assume that Gary Patrick Wale was born on the 23rd of December 1965, that he was delivered with a mid forceps delivery with moderate difficulty, and that after the delivery the child had considerable bruising on both cheeks, the eyes were blackened, there was a laceration in the left parietal area.
Assume further that there is no other history of trauma to Gary Patrick Wale and assume that on March 31, 1966, approximately some three months later, he developed convulsions and seizures and was admitted to the hospital where it was diagnosed that he had bilateral subdural hematomas.
Based upon that, Doctor, and based upon your experience and education and training in this specialty, would you have an opinion as to what caused this condition of bilateral subdural hematomas in Gary Patrick Wale?
"A Yes, sir; I do.
"Q What is that opinion, Doctor?
"A In my opinion, the cause  within reasonable medical probability, the cause of the chronic subdural hematomas was the traumatic or injurious forceps delivery of this child in which the head was injured." (Emphasis added.)
And, Dr. Kaplan reiterated his position by saying:
"THE WITNESS: Well, in my opinion the trauma which you described to the child's head at the time of delivery with a laceration of the scalp and bruises of the cheek, is the result of the forceps delivery of the child; and this entire situation, the forceps delivery causing the injury to the head, is the cause, in my opinion, of the subdural hematoma later found." (Emphasis added.)
Succinctly stated, Dr. Kaplan opined that the use of forceps caused Gary's subdural hematomas. Even though there is contrary medical evidence in the record indicating that the subdural hematomas may have been caused by trauma or a troublesome trip down the birth channel (non-negligent acts) the above-quoted testimony of Dr. Kaplan makes a prima facie case on the issue of causation. No further evidence is required on causation because Dr. Kaplan's testimony precisely and exactly attributes Gary's subdural hematomas to "the traumatic or injurious forceps delivery of this child in which the head was injured."[3] The prima facie case is thus made even though Dr. Kaplan did not specifically link the "traumatic or injurious forceps delivery" to Dr. Barnes. Such link may be reasonably inferred by the jury because the record unequivocally states that Dr. Barnes and no one else performed the forceps delivery of Gary Patrick Wale. Upon the issue of negligence, Dr. Kahn's testimony suffices: that the Tucker-McLane were the wrong forceps to use in these circumstances. He further stated that Tucker-McLane forceps are no longer recognized as proper in deliveries involving a molded or elongated head.
Inasmuch as the testimony of Dr. Kaplan in and of itself makes a prima facie case relating to causation, we need not reach the issue of whether there is circumstantial evidence pertaining to causation; the direct testimony of Dr. Kaplan is sufficient in these circumstances.
*606 Based upon the foregoing, the trial court erred in directing a verdict for the defendants and the district court was in error in affirming the judgment. Plaintiffs did establish a prima facie case of liability and this issue of liability should have been submitted to the jury. In view of this holding, we find it unnecessary to resolve the remaining issues presented for our consideration.
Accordingly, the opinion of the district court is quashed and the cause is remanded with instructions to remand for a new trial.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN and McCAIN, JJ., concur.
NOTES
[1] McBurnette v. Playground Equipment Corp., 137 So.2d 563 (Fla. 1962).
[2] Spivey v. Battaglia, 258 So.2d 815 (Fla. 1972).
[3] Furthermore, the contrasting medical testimony relating to causation and appearing in the district's opinion creates a direct conflict with. Montgomery v. Stary, 84 So.2d 34 (Fla. 1955); and Atkins v. Humes, 110 So.2d 663 (Fla. 1959), which held in similar situations, that the conflicting testimony regarding causation establishes a question of fact for the jury.