Lynn **MALTEMPO** et al., etc.,
Plaintiffs-Appellees.

v.

**Richard B. CUTHBERT, Jr., Defendant-Appellant.**

No. 73-3750.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1974.

Rehearing Denied Dec. 27, 1974.

Stephen H. Sears, Charlie Luckie, Jr., James C. Delesie, Tampa, Fla., for defendant-appellant.

John A. Lloyd, Jr., St. Petersburg, Fla., for plaintiffs-appellees.

Before BROWN, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

Early on the morning of February 5, 1970, a young man was transported from county jail to state prison where he was to serve a sentence for drug violation. En route, he died, strangling on the aspiration of his own vomit.

Michael Maltempo, age 21, had been a diabetic since age 9. His condition required regular insulin injections and special diet, but he had the somewhat erratic history typical of "juvenile" diabetics. Over a period of days while Maltempo was in jail, his diabetic condition was deteriorating so that by February 4 he was sluggish, vomiting, unresponsive, nearly comatose. On that day, his parents and wife visited him and, being alarmed at his condition, immediately attempted to call their family physician, Dr. Mullins. They talked to Dr. Cuthbert, who was taking Dr. Mullins' calls, and informed him that Maltempo was in very bad shape and that the jail personnel did not believe he was sick. Cuthbert assured the Maltempos that he would look into the matter and call them if there were any problems. He then called the jail and, upon being told that Maltempo was being treated by Dr. Freeman, the jail physician, he did nothing further. It is undisputed that he neither went to the jail, called Dr. Freeman, nor contacted the Maltempos.

The jury returned a verdict against Dr. Cuthbert, and awarded Mrs. Maltempo $45,000 damages. Cuthbert appeals this verdict on two grounds: 1) that as a matter of law he did not act negligently, or 2) even if he was negligent, that negligence was not the proximate cause of the boy's death. We find both of these contentions without merit, and therefore affirm.

■■ On the question of negligence, Cuthbert attempts to establish the usual standard for medical malpractice as the appropriate standard for this case. He asserts and there is medical testimony to the effect that he exercised the care and diligence ordinarily exercised by physicians of average skill and learning in the community. Specifically, there was some, though not unequivocal, testimony that it would have been unethical for Cuthbert to have proceeded further upon

finding that Dr. Freeman was in charge of Maltempo's case. But the distinction between the propriety of going to see Maltempo and that of simply calling Dr. Freeman was not always clearly drawn at trial. That it would have been unethical for the doctor to go to the jail to treat Maltempo without Dr. Freeman's consent, we do not question. It is clearly in the patient's medical interest to have only one doctor at a time treating him or prescribing medication. However, to translate the medical standard that one doctor should not *interfere* with another's treatment into a rule that one doctor cannot *inquire* of another as to the condition of a patient, especially when there is an indication that the patient is not receiving proper care, is sophistry at best.

The doctor and his expert witnesses are attempting to tell the Court what the *law* is. Of course, medical expertise will govern as to standards for treatment or diagnosis. But the facts in this case involve neither. If Cuthbert had been a lawyer who had undertaken to see that Maltempo was being properly cared for, the negligence would have been the same. It had nothing to do with medical skill and learning. *Cf.* Saunders v. Lischkoff, 1939, 137 Fla. 826, 188 So. 815; Mascheck v. Mausner, Fla.App.1972, 264 So.2d 859; O'Grady v. Wickman, Fla.App.1968, 213 So.2d 321; Olschefsky v. Fischer, Fla.App. 1960, 123 So.2d 751. Furthermore, even if the "ethical" standard proffered by Cuthbert were the proper legal standard, his failure to inform the parents that he was proceeding no further would alone support the jury's finding of negligence. The Maltempos had a right to rely on his assurances. His actions, or failures to act, lulled the Maltempos into believing that their son was being cared for, and effectively prevented them from seeking other emergency help.

■ Cuthbert's remaining argument is that even if he acted negligently, that negligence was not a proximate cause of Maltempo's death. He asserts that the plaintiffs must establish that his negligence was the only possible cause for the injury in order to reach the jury, relying on LePrince v. McLeod, Fla.App.1965, 171 So.2d 189, and Lane v. White, Fla.App.1964, 167 So.2d 14. In those cases, however, there were numerous possible causes for the injury complained of; the plaintiffs' proof failed in that factual causation between the negligence and the injury was not established. The same Florida court has recently distinguished those cases in a factual situation similar to this case. The defendant doctor negligently failed to diagnose a heart condition and sent the patient home to exercise, whereupon he died. Hernandez v. Clinica Pasteur, Inc., Fla.App.1974, 293 So.2d 747. In *Lane* and *LePrince, supra,* the malpractice was one of several possible factual causes. But in *Hernandez,* the decedent was suffering at all times from the condition of which he ultimately died. The proximate cause issue was, did defendant's malpractice *contribute* to the cause of death? Likewise in the case *sub judice,* there was evidence to indicate that Maltempo was suffering from diabetes out of control at the time of Cuthbert's negligence. The question of whether that negligence contributed to the cause of death was one for the jury. Wale v. Barnes, Fla.1973, 278 So.2d 601. Under Florida law, where there is direct medical evidence attributing the injury to the negligence, a prima facie case of causation is established and it becomes a jury question. Wales v. Barnes, *supra.* In the instant case, there was sufficient evidence for a jury to decide that had Maltempo received medical assistance on the evening of February 4, he would not have died.

■ Cuthbert also asserts that proximate cause is not established because there were other intervening negligent acts which superseded his negligence. There is no question that others were negligent. The other defendants, the sheriff and the jail doctor and nurse, all settled with plaintiffs for a total of $80,000. Under Florida law,

[a] person's negligence is not the proximate cause of an injury that results from the intervention of a new and independent cause that is neither anticipated nor reasonably foreseeable by the person, is not a consequence of his negligence, is not controlled by him, operates independently of his negligence, and is the efficient cause of the injury in the sense that the injury would not occur in its absence.

23 Fla.Jur. Negligence § 37 (1959); *see also*, Moyer v. Martin Marietta Corp., 5 Cir. 1973, 481 F.2d 585, 591–593. The question then, is, were the intervening acts independent, efficient acts of negligence within the meaning of Florida law?

■■ The evidence clearly establishes that the immediate cause of Maltempo's death was strangulation on his own vomit. There is a conflict in the evidence as to whether the vomiting was caused by hyperglycemia (high blood sugar) or insulin shock (low blood sugar). Cuthbert's theory is that an improperly administered shot of insulin entered a vein and caused insulin shock, the inference being that that shot was an independent, efficient cause of death. However, although the man who gave the shot was wholly inexperienced, there is no direct evidence that he hit a vein; that possibility is speculation at best. Other expert witnesses testified that an acidosis (high blood sugar) condition was developing over the days prior to the boy's death. He had been vomiting a good deal during that time. According to these experts, Maltempo was suffering from the condition which caused the vomiting and death at the time his parents called Cuthbert.

Although there is a great deal more evidence to support the latter theory, it makes no legal difference which is correct in fact. There is ample evidence, both expert and lay, to show that Maltempo was in very serious condition on the day before his death. Expert testimony indicated that a "medical emergency" existed. There can be little doubt that had a doctor seen Maltempo that evening, he would have taken steps commensurate with that emergency, and the boy's death might well have been averted. It is not necessary for the plaintiff to prove that it would certainly have been averted. Hernandez v. Clinica Pasteur, Inc., *supra*. Furthermore, the jury might well have believed that the boy's condition itself caused the shot to be improperly administered. He usually injected himself, but that morning was unable to do so. He could not hold his head up and responded with a slight nod when the deputy offered to give him the shot. He himself pushed the plunger. The chain of causation linking Cuthbert's negligence with the death is even stronger when the evidence is viewed in this light.

■ The fact that others were subsequently negligent and could have prevented the boy's death may mean that there were multiple proximate causes; it does not vitiate the causal relationship between the doctor's negligence and the boy's death.

Affirmed.