341 So.2d 507 (1976)
Elzada W. CROMARTY, Etc., Petitioner,
v.
FORD MOTOR COMPANY, Etc., et al., Respondents.
No. 47159.
Supreme Court of Florida.
November 30, 1976.
Rehearing Denied February 10, 1977.
*508 William C. Pierson, Gainesville, and Robert W. Morrison, Tampa, for petitioner.
William M. Howell of Howell, Kirby, Montgomery, D'Aiuto & Dean, Jacksonville, and Joe C. Willcox and L. William Graham of Dell, Graham, Willcox, Barber, Rappenecker, Ryals & Henderson, Gainesville, for respondents.
ADKINS and BOYD, Justices.
We are reviewing this case by writ of certiorari because the decision of the District Court of Appeal, 308 So.2d 159 (Fla.1st DCA 1975), conflicts with Wale v. Barnes, 278 So.2d 601 (Fla. 1973) and LaBarbera v. Millan Builders, Inc., 191 So.2d 619 (Fla.1st DCA 1966). We have jurisdiction. Article V, Section 3(b)(3), Florida Constitution.
Suit was brought by petitioner to collect damages against respondents arising from the accidental death of her husband from drowning in a pond near Gainesville, Florida, after the Ford automobile which he was driving ran off the road into the pond. The question for determination here is whether the evidence submitted to the jury constituted a sufficient basis for the verdict rendered by the jury against the defendant and for the plaintiff. The verdict was based upon testimony of expert witnesses who had examined the automobile after it was removed from the lake. Petitioner's expert witness discovered the automobile had lost its steering because of a fractured adjuster nut which had permitted the worm gear to back out of the control box in the steering mechanism and further testified that, in his opinion, the adjuster nut fracture could not have been caused by impact in the accident, rather it must have been due to defective design. There was additional evidence of metallurgical and engineering testing to support opinions of the experts. There was conflicting testimony by expert witnesses for respondents that the damage to the steering mechanism was caused by the impact of the wreck when the car left the road. We perceive it was the jury's duty to weigh and evaluate all testimony in reaching a verdict. All witnesses personally examined the physical mechanical steering device and based their opinions on their findings.
Although the jury reached the verdict for the petitioner the trial court issued judgment for the defendants, notwithstanding the verdict, and the District Court of Appeal affirmed the action of the trial court on the theory that the testimony by the experts was so speculative and so filled with conjecture that it was not sufficient to constitute a basis for rendering the judgment.
We well agree with the District Court of Appeal that verdicts should not be based upon speculative and conjectural expert testimony with no basis in evidentiary fact. However, the expert opinion, that the automobile lost its steering before the accident, was based on the evidentiary fact that the adjuster nut was fractured and the conclusion that, since impact of the accident *509 could not have caused the fracture, it must have been due to defective design. The controlling law in Florida is expressed in Wale, supra, where this Court reversed a District Court affirmance of a directed verdict for a defendant in a medical malpractice suit. The defendant was sued for damages stemming from subdural hematomas caused by his use of forceps in the birth of the plaintiff. The court saw error in taking the decision as to liability away from the jury when an expert had testified that the hematomas were caused by the defendant and that opinion was grounded on the fact that the defendant had used the wrong type of forceps. It has been held that an expert opinion may support a jury verdict, so long as it is grounded in fact, even though it involves a conclusion as to causation, in other opinions, as well. LaBarbera, supra, and Zack v. Centro Espanol Hospital, Inc., 319 So.2d 34 (Fla.2d DCA 1975).
Applying these standards to the case before us, it is our view that there was sufficient evidence before the jury to support the entry of the verdict which should not have been vacated by the court. The growing complexity of mechanical devices, including transportation equipment, renders it more necessary as time passes to rely upon expert opinions as to the causes of accidents. We are of the view that expert opinions, when supported by scientific and factual data, must be relied upon in reaching the ends of justice and that the need for such reliance continues as a society becomes more complex.
It is asserted that the amount of damages to be assessed was arrived at by a quotient verdict wherein each juror stated the amount of damages he considered proper, the sum was computed, and divided by the number of jurors to determine the amount of the verdict. The trial judge found that the jurors agreed in advance to be bound by the results of such procedure. It has long been held in this jurisdiction that this is improper and constitutes a ground for new trial. Marks v. State Road Department, Fla., 69 So.2d 771 (1954). We agree that quotient verdicts are still not permitted in Florida.
However, in order to invalidate a verdict as a quotient verdict, it is insufficient to show merely that the jurors used the quotient process at some stage of their deliberations and that their verdict corresponded exactly or approximately to the amount of the quotient. Rather, it is essential and vital to show that the jurors agreed prior to obtaining the quotient that they would be bound by it and accept it as their verdict. See 76 Am.Jur.2d Trial § 1135 at 108.
The jury deliberations took place in the latter part of November 1972 and the jurors were recalled for interrogation on June 7, 1973, approximately six months after their deliberation. The following form question was asked the jurors at that time by the trial judge:
"[A] quotient verdict is a verdict that is arrived at by each juror agreeing in advance to be bound by a figure, which is the average of six figures submitted by each juror, totalled, then divided by six, with the resulting verdict amount being the final average figure arrived at. Was your verdict in this case a quotient verdict?"
The jury foreman Miller answered the form question in the affirmative. He then stated that each juror had submitted a figure; these figures were totaled and then divided by the number of jurors. When he was asked if the jurors had agreed beforehand, he replied:
"Before we did it, we agreed that would be the way to arrive at that verdict." (Emphasis supplied.)
The trend of the jurors' testimony was that they had disagreed as to the amount and were seeking a method to reach an agreement or compromise so that a verdict could be returned. There was no proof of the existence of an agreement by the jurors to be bound by whatever amount would result, with the exception of juror Webb who answered each question with the word "yes" without explanation. Each question *510 was leading, so that the affirmative answers do not constitute any substantial proof.
Juror Hudson answered the form question in the affirmative but when inquiry was made as to the length of time the jurors discussed the figure after reaching it by the quotient method, the juror said:
"I would say we talked about it for about ten minutes, if I recall  maybe more or less, I don't remember, it's a long time ago. There was discussion as to whether or not we all agreed that was an equitable amount and to whether or not we all thought that the way it was calculated was equitable." (Emphasis supplied.)
The Court then asked juror Hudson the following question and received the following response:
"Q. Now, I want you to reflect back to that day of November 30th, 1972, prior to the time that the figures were submitted. In your discussions before the figures, were submitted, totalled, then divided, did you agree that you would be bound by the average of all six figures, of what everybody individually thought?
"A. I can't really recall that. I doubt it. I doubt that I personally would have agreed with a thing like that. I can't really recall whether we did or not. I doubt  I know that there was a discussion as to exactly how we were going to arrive at the amount  you know, how do you do that between six people, the exact figure everybody agrees on. I remember there was discussion that way. As far as whether or not we all said, yes, no matter what we came up with we would agree on it, I don't know for sure, but I doubt that." (Emphasis supplied.)
Juror Barwick answered the form question in the affirmative, but the subsequent interrogation contains the following:
"Q. And had you agreed before you did that that whatever sum came out, by doing that, that you would be bound by that and that would be your verdict?
"A. I don't think that definition was ever given to us that way. From what I understood in the jury room, we each gave a figure, what it would be, and then the average was taken, but whenever you estimated it, you know, what you thought, you doubled what your estimation would be, because Mrs. Cromarty for instance would only get the original figure. I have a feeling I am not doing so well."
Juror MacGregor denied that it was a quotient verdict, in the following interrogation:
"Q. Was your verdict in this case a quotient verdict?
"A. No, sir, I don't think so. I particularly don't think so, because you said a quotient verdict calls for an agreement to the figure before the fact, and I personally did not feel bound to any figure we arrived at in that manner. So for that reason, I say, no, it wasn't."
* * * * * *
"Q. Was there deliberation and discussion in respect to the verdict after that figure had been arrived at?
"A. As I recall, after we arrived at the figure, each person in turn was asked if he then agreed with that figure, something simple, such as "This is the figure, do you agree", around the table." . .. When the figure came in  when we got the figure, I felt it was a reasonable compromise between what I felt was the figure and what I felt the other people felt was a fair figure. Had I not felt it was a fair compromise, I would not have agreed to it, and I felt I had the opportunity to disagree. That is why I don't feel I was bound beforehand."
Juror Hudson answered the form question in the affirmative but the interrogation revealed the following:

*511 "Q. And somebody suggested adding up those figures. Now, before you added them up, had you agreed that whatever came out, that that then would be the figure the jury would arrive at in its verdict?
"A. I think we suggested that this would be the way to arrive at it, since we were so widely spread in the amount of money some people thought, as opposed to others." (Emphasis supplied.)
The proof was clear and convincing that during their deliberation the jurors had varied widely in the amount of damages to be assessed. In order to reach some fair figure upon which they could agree, the jurors decided to use the quotient process. This was not for the purpose of being bound by the resulting figure, but for the purpose of reaching an equitable and just amount. Certainly, from the above statements, it is clear that the jurors intended to discuss it further and did not feel that they were bound by the resulting figure.
This Court, in Jackson Grain Company v. Hopkins, 75 So.2d 306 (Fla. 1954), recognized that the method of aggregating and averaging is a significant circumstance to be considered in determining whether there was, in fact, a quotient verdict. The Court condemned such a method when the jury deliberated for only "a little more than an hour after retirement."
Also, in Malone v. Marks Brothers Paving Co., 168 So.2d 753 (Fla.3d DCA 1964), the District Court of Appeal criticized the reaching of a verdict by aggregating or averaging. In Malone, just as in Jackson, there was other evidence of an agreement to be bound after the average was taken.
The record fails to show that the amount of damages to be assessed was arrived at by a quotient verdict. All of the jurors did not agree in advance to be bound by the results of such procedure.
Accordingly, the decision of the District Court of Appeal, First District, is quashed and the cause is remanded for the purpose of a further remand to the trial court with instructions to reinstate the verdict of the jury and enter judgment accordingly.
It is so ordered.
OVERTON, C.J., and ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
ROBERTS, J., dissents.