SORONDO, J.
Joseph Goldberg, M.D., Emergency Medical Services Associates, Inc. and Patrick E. Belardi, Personal Representative of the Estate of Albert A. Belardi (Belardi), appeal from the final summary judgment entered in favor of Nancy Gulotta, A.R.N.P. (Gulotta).
Belardi, a 68-year-old man with a history of congestive heart failure, cardiomyo-pathy and pulmonary edema, fell on an escalator at the Port of Miami and was transported to the Cedars Medical Center. Gulotta, a nurse practitioner, evaluated Belardi upon his arrival at the emergency room at 4:00 p.m. When Gulotta first observed Belardi, he^ had a contusion and laceration on the bridge of his nose, but he was conscious, alert, oriented and had no shortness of breath. Gulotta conducted a routine exam of Belardi’s throat, using a tongue depressor and shining a light to make sure she had a clear view. Gulotta saw no blood in the back of Belardi’s throat and no indication of bleeding. This exam took 15-20 minutes, after which Gu-lotta ordered x-rays and suturing for the laceration.
*573 Gulotta went in and out of Belardi’s room several times and spoke with him to ensure that he was “okay.” When Gulotta checked at 5:00 p.m., Belardi told her that he had difficulty breathing and felt like he had something in his throat. Gulotta and Nurse Joseph Littrean immediately suctioned Belardi, producing a small amount of clear sputum. Belardi continued to have difficulty breathing, and Gulotta summoned Dr. Goldberg. While Gulotta was summoning Dr. Goldberg, Littrean noted that Belardi said he felt like he had blood in the back of his throat. Littrean continued suctioning Belardi, producing “a small amount of thick sputum— darkish in col- or.”
Dr. Goldberg arrived about 5:02 p.m. Belardi was conscious and able to talk, but continued to display signs of respiratory distress. Belardi was immediately moved to the acute side of the emergency room. Dr. Goldberg prepared to intubate and looked for airway obstructions and blood clots. He observed no bleeding in the posterior nasal pharynx and was able to see all the way to Belardi’s larynx. After making several unsuccessful attempts at intubation, Dr. Goldberg called Code Blue at 5:05 p.m. and called the intensivist, Dr. Martinez, to perform the intubation. Dr. Martinez intubated Belardi and did not recall seeing any blood or clot at any time during the intubation process. Belardi never regained consciousness and was eventually transferred to another hospital, where he was taken off life support and died.
Belardi’s estate filed a medical malpractice/wrongful death action alleging, in pertinent part, that Gulotta failed to adequately examine, evaluate, monitor and treat Belardi, allowing blood to accumulate in his nasal pharynx which ultimately obstructed his airway and led to his arrest or death. Gulotta moved for summary judgment, filing an affidavit of Dr. Richard Dellerson in support of her motion. Dr. Dellerson opined that there was no medical basis for the assertion that Gulotta allowed Belardi to choke on his own blood, as there was no evidence that Belardi had a posterior nose bleed while in the emergency room at Cedars. Dr. Dellerson asserted that Belardi’s subjective statement that he “felt like he was bleeding into the back of his throat” was not evidence of bleeding and opined that pulmonary edema was the cause of Belardi’s breathing difficulties. Dr. Eric Davis, plaintiffs expert, testified in deposition that in his professional opinion the clinical evidence was most consistent with bleeding into the back of Belardi’s throat, evidenced by Be-lardi’s statement, the dark material suctioned from his throat, his choking, his subsequent respiratory difficulty and the chest x-ray taken at Cedars. Dr. Davis opined that in all probability, Belardi aspirated blood and/or a clot. Dr. Davis testified that Gulotta fell below the standard of care by not performing a thorough examination, allowing Belardi to remain on his back and allowing him to aspirate. The trial court granted Gulotta’s motion for summary judgment, denied Belardi’s motion for rehearing, and entered final summary judgment in favor of Gulotta. This was error.
The conflict in the testimony of the parties’ respective experts creates a genuine issue of material fact which should properly be resolved by a jury. See Moore v. Morris, 475 So.2d 666 (Fla.1985); Holl v. Talcott, 191 So.2d 40 (Fla.1966); see also Cromarty v. Ford Motor Co., 341 So.2d 507 (Fla.1976); Cuervo v. Mercy Hosp., Inc., 694 So.2d 98 (Fla. 3d DCA 1997); Zack v. Centro Espanol Hosp., Inc., 319 So.2d 34 (Fla. 2d DCA 1975).
We reverse the final summary judgment entered by the trial court and remand for further proceedings.